Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Cynthia Harden*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Harden, | Case No.  2:11-CV-00615-DKD |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | |
| CINGA Life Insurance Company of New York, Pfizer Inc. Ltd. Health & Welfare Administration, Pfizer Inc. Ltd. Health & Welfare Administration Employee Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Cynthia Harden (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

## *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant Pfizer Inc. Ltd. Health & Welfare Administration (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by <u>CIGNA</u> Life Insurance Company of New York (hereinafter referred to as "LINY"), which, upon information and belief, is wholly owned and a subsidiary of Cigna Corporation.  The specific LINY policy is known as group policy NYK0002279.  The Company's purpose in subscribing to the LINY policy was to provide disability insurance for its employees.   Upon information and belief, the LINY policy may have been included in and part of the Pfizer Inc. Ltd. Health & Welfare Administration Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.     Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to LINY.  Plaintiff believes that as it relates to her claim, LINY functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.     Upon information and belief, Plaintiff believes LINY operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* LINY's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6.     The Company, Plan and LINY conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9.     After working for the Company as a loyal employee since 2001, Plaintiff became disabled on or about February 8, 2007 due to serious medical conditions and was unable to work in her designated occupation as a Chemical Operator III. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10.     Following his disability, Plaintiff applied for and received short term disability benefits as of February 8, 2007. She attempted to return to work, but subsequently began receiving short term disability benefits for the same serious medical conditions as of June 20, 2007.  Plaintiff exhausted her short term disability benefits.

11.     Plaintiff thereafter applied for long term disability benefits under the relevant LINY policy.  Upon information and belief, Plaintiff became eligible to receive long term disability benefits as of September 19, 2007.

12.     The relevant LINY long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

An Employee is Disabled if, because of Injury or Sickness,

1. he or she is unable to perform all the material duties of his or her regular occupation; and

2. after Monthly Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

13.     In support of her claim for long term disability, Plaintiff submitted to LINY medical records from her treating physicians supporting her disability as defined by the relevant LINY policy.

14.     LINY notified Plaintiff in a letter dated November 13, 2007 that her claim for long term disability benefits had been approved as of September 19, 2007.

15.     LINY, thereafter, notified Plaintiff in a letter dated July 15, 2008 that it had placed a "Social Security Disability estimate" against her long term disability benefits, finding, based on its own evaluation of Plaintiff's serious medical conditions, that Plaintiff was unable to engage in any gainful occupation which may have existed in the national economy as of the date her long term disability benefits first became payable and effectively withholding from Plaintiff's monthly payment of long term disability benefits that amount of Social Security Disability benefits LINY had determined Plaintiff was entitled to receive. LINY's own finding that Plaintiff met the SSA's definition of disabled and withholding payment of disability benefits Plaintiff was otherwise entitled to receive under the relevant LINY policy is relevant evidence for this Court to consider with regard to the lawfulness of

LINY's decision to terminate Plaintiff's benefits after ignoring both the SSA's and its own determination and is an admission by LINY that it believed Plaintiff met SSA's definition of disability.

16.   Thereafter, Plaintiff applied for social security benefits through the Social Security Administration (SSA) with the assistance of Advantage 2000 Consultants, who, upon information and belief, assists LINY in securing Social Security benefits for the Company's employees, as required by the relevant LINY policy.

17.   The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of February 8, 2007.  The SSA's definition of disability is significantly more limiting than the aforementioned definition of disability for the first 24 months of disability and substantially similar to the aforementioned definition of disability after the first 24 months of disability set forth in the relevant LINY policy and therefore, SSA's approval and continued payment of disability benefits through the date of this complaint is relevant evidence for this Court to consider with regard to the lawfulness of LINY's decision to terminate Plaintiff's benefits after ignoring the SSA's determination; notwithstanding the fact LINY offset Plaintiff's receipt of SSA benefits from her LINY benefit each month for years by acknowledging she met SSA's definition of disability; *to wit*, Plaintiff was unable to engage in any gainful occupation.

18.   LINY notified Plaintiff in a letter dated March 19, 2009 that it would be re-evaluating her claim for long term disability benefits under the aforementioned definition of disability as the first 24 months of disability ended on September 18, 2009.

19.   As part of its re-evaluation of Plaintiff's claim, LINY obtained an April 9, 2009 Disability Management Solutions Medical Request Form Statement from one of Plaintiff's treating physicians.  Plaintiff's treating physician stated that Plaintiff could not

engage in any activity that required pushing or pulling weight over 10 lbs. and could not engage in any work that required stooping, kneeling, crouching, crawling, exposure to odors/fumes/particles or around machinery and could not work an extended shift or overtime. Plaintiff's treating physician further indicated that Plaintiff could only occasionally engage in sitting, standing, walking, reaching or lifting/carrying 10 lbs.

20.     In a letter dated May 13, 2009, LINY notified Plaintiff it had determined she was no longer totally disabled and informed her it was terminating her long term disability benefits as of May 18, 2009, based on an erroneous finding that no medical records supported Plaintiff's continued total disability.

21.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the May 13, 2009 denial of her claim for long term disability benefits by a letter dated November 2010.  In support of her appeal, Plaintiff submitted additional medical evidence to LINY demonstrating her total disability as defined in the relevant LINY policy.

22.     LINY notified Plaintiff in a letter dated January 26, 2010 it had overturned its May 13, 2009 decision to deny her continued long term disability benefits, approving disability benefits through January 18, 2010.

23.     LINY notified Plaintiff in a separate letter dated January 26, 2010, it was continuing to evaluate Plaintiff's long term disability benefits claim based on the change in definition of disability from "own" to "any" occupation as of September 19, 2009.  LINY's letter informed Plaintiff that she would continue to receive long term disability benefits until a determination based on the change in definition of disability had been made.

24.     LINY notified Plaintiff in a letter dated January 29, 2010 that she no longer met the definition of  disability as of September 19, 2009, based on the erroneous finding that Plaintiff's medical evidence did not support a finding that Plaintiff was totally disabled from engaging in "any" occupation.

25.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the January 29, 2010 denial of her claim for long term disability benefits by a letter dated July 2, 2010.  In support of her appeal, Plaintiff submitted additional medical evidence and lay witness affidavits to LINY demonstrating her total disability as defined in the relevant LINY policy.

26.     In support of her appeal, Plaintiff submitted to LINY a July 8, 2010 Functional Capacity Evaluation ("FCE") prepared by a qualified physical therapist. In preparing the FCE, Plaintiff's medical records were reviewed and Plaintiff underwent an evaluation for approximately three (3) hours.  The physical therapist found that Plaintiff is "*physically INCAPABLE of performing work in the SEDENTARY physical demand level*" and "*INCAPABLE of performing any type of work on a regular and consistent basis"* (bold, italic emphasis added; capitalization emphasis original) even at a sedentary level based on the fact that, *inter alia*, Plaintiff's serious medical conditions prevent her from sitting or standing for more than 1/3 of the workday and she is unable to squat or kneel and severely limited in her ability to lift or work from lower levels, inability to carry items and low aptitude for agility/balance, climbing and stamina/endurance.  The physical therapist concluded that *"the results of this test may be considered a valid representation of Ms. Harden's current functional level"* (emphasis added).

27.     Plaintiff further submitted an October 27, 2010 affidavit from a long time friend who stated "I believe it is critical that you truly understand the magnitude of [Plaintiff's] problems and how they preclude not only her ability to work in any occupation but to simply enjoy life."  Plaintiff further submitted an October 28, 2010 affidavit from a friend of over twelve (12) years who was familiar with Plaintiff's serious medical conditions, who stated it was her opinion Plaintiff "is unable to work on a full time or even part time basis."  Plaintiff also submitted an October 27, 2010 affidavit from her sister, who

opined Plaintiff "can no longer enjoy things she once did due to the constant, extreme pain she is in. Everyday things such as standing, sitting, walking, picking up items are difficult to deal with."

28.    In further support of her appeal, Plaintiff submitted evidence to LINY that she suffered from multiple side-effects of her medications which negatively impacted her ability to maintain attention and concentration.

29.    Plaintiff further submitted to LINY a November 5, 2010 narrative letter from one of her physicians, who is board certified in Physical Medicine and Rehabilitation as well as Pain Medicine, who stated, to a reasonable degree of medical certainly, "*I agree with the findings of total and permanent disability*." (emphasis added).

30.    In further support of her appeal, Plaintiff submitted to LINY a vocational report prepared by a certified rehabilitation counselor dated November 7, 2010.   The vocational expert concluded "*[f]rom a vocational standpoint [Plaintiff is] completely and totally disabled from the workforce. [Plaintiff] could not be expected to maintain any employment that may exist in the national economy. As such, she fully meets the strict criteria set forth in her disability policy or any similar policy*." (emphasis added).

31.    LINY notified Plaintiff in a letter dated January 26, 2011 it was upholding its denial of Plaintiff's long term disability benefits as of January 19, 2010, based on an erroneous finding that no medical records supported her continued total disability.  LINY's determination was erroneous and unlawful because Plaintiff's medical condition had not improved in any meaningful way which would have allowed a return to work [1] from the

---

[1] *See eg. McOsker v. Paul Revere Life Insur.Co.,* 279 F.3d 586 (8th Cir. 2002), held that once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable.  *Also see, Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001), *Walke v. Group Long Term*

time LINY originally evaluated and approved her claim for long term disability benefits and determined, on its own, that Plaintiff would be found by the SSA unable to engage in any occupation which may have existed in the national economy as of the date her long term disability benefits first became payable.

32.     In denying Plaintiff's continued long term disability benefits, LINY relied upon a peer review report prepared by Dr. Robert L. Broghammer, allegedly board certified in Occupational Medicine.  Plaintiff believes that Dr. Broghammer may not have been qualified to fully and fairly evaluate all of her serious medical conditions. In evaluating Plaintiff's claim on appeal, LINY had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" and it afforded her an unlawful review by failing to do so.[2]

33.     Plaintiff believes it was unreasonable and evidence of LINY's conflict of interests for Plaintiff's claim to be referred to a physician who may not have had the medical training, knowledge or experience to fully and fairly evaluate Plaintiff's disability. A reasonable un-conflicted fiduciary making a good faith effort to afford a full and fair review would have retained a fully qualified physician to review Plaintiff's claim on

---

*Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001)(burden placed on insurer to establish claimant's ability to work).

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

appeal. "ERISA imposes higher-than-marketplace quality standards on insurers" [3] and LINY's referral of Plaintiff's claim on appeal to Dr. Broghammer may have fallen well below any reasonable quality standard and therefore, denied Plaintiff of a full and fair review.

34.   Dr. Broghammer did not examine Plaintiff and his opinion that Plaintiff's inability to work is not supported by the medical documentation as of January 18, 2010 was based entirely on a selective review of Plaintiff's medical records, and Plaintiff's treating medical professionals' opinions that she was unable to engage in any gainful employment. Dr. Broghammer's peer review also unlawfully and erroneously ignored and/or de-emphasized Plaintiff's self-reported complaints [4] of her abilities and the combined effect [5] Plaintiff's prescribed medications had on her ability to work in any occupation. Plaintiff believes this evidence was critical evidence because the aforementioned limitations precluded any gainful employment and were sufficient to meet any definition of disability set forth in the relevant LINY policy. The aforementioned evidence should have been considered and the fact it was not precluded a lawful, full and fair review of Plaintiff's claim.

---

[3] Id.

[4] "While the rules and presumptions of our Social Security case law do not apply to ERISA benefits determinations, see *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003), our Social Security precedents are relevant for the factual observation that disabling pain cannot always be measured objectively--which is as true for ERISA beneficiaries as it is for Social Security claimants." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008).

[5] *See Peterson v. Fed. Express Corp. Long Term Disability Plan*, 2007 U.S. Dist. LEXIS 41590 (D. Ariz. 2007).

35.     Upon information and belief, Plaintiff believes Dr. Broghammer's biased opinions may be the product of his relationship with the medical review industry in general wherein he may be repeatedly retained by LINY [6] or other similar insurance industry related entities to perform the type of services he provided in Plaintiff's claim.  Plaintiff believes Dr. Broghammer's conflict of interest is apparent in that he may have an incentive to protect his own consulting relationships with the aforementioned industry by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide report(s) which are favorable to the insurance companies such as LINY and which supported the denial of Plaintiff's claim.  Plaintiff believes Dr. Broghammer's conflict of interest led to his biased review and LINY's conflict of interest led it to rely on Dr. Broghammer's report to deny her claim.

36.     In denying Plaintiff's continued long term disability benefits, LINY further relied upon the opinions of an unidentified "Medical Consultant" who appears to be one of its own employees.  Plaintiff questions the credentials, independence, impartiality and bias of LINY's own employee to fully and fairly review her claim and she believes the Medical Consultant's opinion is adversarial because of the individual's conflict of interest as an employee.  Plaintiff believes LINY's financial conflict of interest is a motivating factor why it referred Plaintiff's claim to its own employee for review.

37.     LINY's unidentified Medical Consultant did not examine Plaintiff and his/her opinion that Plaintiff was not totally disabled from engaging in any occupation was based

---

[6] Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an "incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (U.S. 2003).

entirely on a selective review of Plaintiff's medical records, Plaintiff's self-reported complaints and side-effect of her medications and a selective review of her treating medical professionals' opinions that she was unable to engage in any gainful employment.

38.   LINY further relied upon a Transferrable Skills Analysis in denying Plaintiff continued long term disability benefits.  The Transferrable Skills Analysis was based on the erroneous findings of Dr. Broghammer and LINY's unidentified Medical Consultant's opinions and is, therefore, likewise flawed and unsupported by the medical record.

39.   LINY's January 26, 2011 denial of Plaintiff's continued long term disability benefits specifically addressed Plaintiff's award of Social Security benefits, dismissing any reliance on such award because it was "[w]ithout any opinion from SSA explaining the basis for its decision", notwithstanding LINY's own previous determination that Plaintiff would be found totally disabled by the SSA and withholding of long term disability benefits payment to Plaintiff based on its own finding.

40.   LINY's denial failed to provide Plaintiff with a full and fair review by failing to properly investigate her claim in violation of ERISA, specifically 29 C.F.R. § 2560.503-1(h) because it again completely failed to reference, consider and/or selectively reviewed most if not all of her evidence which adequately documented her inability to work in any occupation.

41.   LINY denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms and ignoring medical evidence which was consistent with Plaintiff's self-reported symptoms, failing to rely on a qualified medical expert to evaluate Plaintiff's serious medical conditions, failing to consider all the

limitations set forth in her medical evidence and failing to obtain independent medical examination when the policy allowed one.

42.    LINY has notified Plaintiff she is entitled to bring legal action regarding her claim for long term disability benefits.

43.    In evaluating Plaintiff's claim on appeal, LINY had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [7]

44.    Plaintiff believes the reason LINY provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles it undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Plan retained LINY to administer her disability claim.

45.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINY and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINY's decision to deny her claim.

46.    With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA

---

[7] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

47.    As a direct result of LINY's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

48.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

49.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order requiring Defendants to pay Plaintiff disability benefits pursuant to the "any" occupation definition(s) of disability as a result of her meeting the definition of disability in the relevant policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B.    For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.    For such other and further relief as the Court deems just and proper.

DATED this 10th day of May, 2011.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff